# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 18-02778-DSC7 |
| **ANDREW F. DAWSON,** | ) | Chapter 7 |
| | ) | |
| **Debtor.** | ) | |

## MEMORANDUM OPINION

This case is before the Court on the Emergency Motion to Reopen Bankruptcy Case (doc. 29, the "Motion") filed by Tracy Dawson (the "Movant"). The Movant alleges that an upcoming foreclosure on her home requires "immediate action." (Doc. 29 at 1.) The Court set the Motion for an Evidentiary Hearing (the "Hearing") on February 28, 2019. (Doc. 32.) Appearing at the Hearing were the Movant; Andrew Dawson (the "Debtor"); George Babakitis, Debtor's counsel; and, Andre Toffel, Chapter 7 Trustee (the "Trustee").

The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the General Order of Reference, as amended, entered by the United States District Court for the Northern District of Alabama. This is a core proceeding under 28 U.S.C. § 157(b)(2).

Based upon the filings, the representations and arguments of the parties, and for reasons set forth herein, the Court **FINDS** and **CONCLUDES** as follows:[1]

### I. Background

Mr. and Mrs. Dawson were married in 2012. They divorced in August 2017. (*See* Doc. 29 at 2.) Prior to divorcing, the couple owned a home at 1829 Lake Cyrus Club Drive, Hoover, Alabama 35244, and it was their marital home (the "Home"). (Doc. 29 at 2.) When the couple

---

[1] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files, and the Court does so in this case. *See IT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. Unit B July 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).

divorced, the Final Judgment of Divorce dated August 24, 2017 (the "Divorce Decree") provided, among other things, that the Home should be "immediately listed for sale within forty-two (42) days of the entry of Final Judgment of Divorce." (Doc. 29 at 2.) There were several provisions in the Divorce Decree setting the parameters for selling the property. (*See* Doc. 29 at 2.) One such provision stated: "The Defendant [the Movant] shall reside in the marital residence during the time the property is being sold and shall be responsible for all indebtedness associated with said real property." (Doc. 29 at 2.)

The record is unclear as to what transpired with the Home after the Divorce Decree was entered, other than the fact that the Movant still resides there, and she believes that the Home is scheduled for foreclosure on March 19, 2019. At the Hearing, the Movant testified that she understood, per the Divorce Decree, that she was responsible for the debt associated with the Home while she was living there, meaning she had to make the mortgage payments. But as far as answering any questions about mortgage payments, and whether she has made them, the Movant was non-responsive; testifying only that those matters were "being handled in domestic relations court." During the Hearing, the Movant avoided discussing or providing any answers about the divorce or the sale of the Home. When asked about what she was trying to accomplish with the Motion (i.e. was she was trying to sell the property and, by implication, seek the Court's approval to do so?), she stated that her "primary goal" was being accomplished in domestic relations court. Thus, at the very least, it appears that the Movant understands that the state court must adjudicate issues related to the foreclosure of the Home. Indeed, this Court granted a Motion for Relief from the Automatic Stay in favor of Wells Fargo Home Mortgage ("Wells Fargo") on September 6, 2018. (Doc. 24.)

2

Case 18-02778-DSC7    Doc 36    Filed 03/13/19    Entered 03/13/19 14:31:02    Desc Main
Document    Page 2 of 18

The procedural posture of this case raises the question: what does the Movant want to accomplish by filing the Motion? Having reviewed the pleadings and exhibits, as well as the testimony and arguments made at the Hearing, the Court concludes that the Movant opposes the Debtor's discharge because she believes his bankruptcy petition was incomplete, falsified, and inaccurate. There is also a lack-of-notice component to her allegations. The Movant asserts that as a "bonafide creditor" she was entitled to, but denied, notice of the Debtor's bankruptcy case. But in her own words, what the Movant is seeking to accomplish is "to correct this matter and to make it right, truthful and fair" because, in her opinion, the Trustee has not. (Doc. 29 at 1.) Because the Movant is proceeding *pro se*, her pleadings are held to "a less stringent standard" and the Court will construe her allegations liberally. *Tannebaum v. U.S.,* 148 F.3d 1262, 1263 (11th Cir. 1998).

**Findings of Fact and Procedural History**

The Debtor filed a "no asset" chapter 7 bankruptcy case before this Court on July 9, 2018. (Doc. 1.) The Debtor did not list the Home as an asset on Schedule A of his bankruptcy petition. (*See* Doc. 1.) On Schedule D of the petition, the Debtor listed Wells Fargo as a secured creditor with a debt of $249,963, and he listed the Home as collateral for this debt with a value equal to the amount of debt, $249,963. (*See* Doc. 1.) The Debtor also listed Wells Fargo as an unsecured creditor on Schedule F of his bankruptcy petition with a debt of $273,035. (*See* Doc. 1.) The Debtor's Statement of Intention indicated that he was surrendering his interest in the Home to Wells Fargo. (*See* Doc. 1.)

Four days after the Debtor filed his chapter 7 petition, Wells Fargo, which holds a first mortgage on the Home, filed a Motion for Relief from the Automatic Stay under 11 U.S.C. § 362. (Doc. 16.) In its Motion for Relief, Wells Fargo alleged that the Debtor was $11,775.32 behind on his mortgage payments with no payment since October 2017. (Doc. 16.) The Motion for Relief

3

and the Fact Summary (doc. 18) alleged that the payoff amount of the Wells Fargo mortgage was $251,107.39 as of July 25, 2018. Based on the Debtor's default, Wells Fargo sought to enforce its security interest in the Home and to pursue its remedies under state law. With the Debtor's consent after a hearing, this Court granted the Motion for Relief in favor of Wells Fargo and entered an Order on September 6, 2018. (Doc. 24.) The Trustee filed his Report of No Distribution on August 7, 2018 (doc. 13), and the Clerk of Court closed this case on October 24, 2018. (Doc. 28.)

The Movant filed the Motion on February 19, 2019, and alleged, among other things, that the Debtor:

- Provided no notice of this bankruptcy case or the discharge order to the Movant.

- Owed a debt to the Movant that was not listed in his bankruptcy schedules.

- Undervalued the real property on his bankruptcy schedules.

- Did not disclose all his income on his bankruptcy schedules.

- Did not disclose his class action talcum powder claim for Linda Dawson (another former wife, who is deceased).

- Did not disclose his claim against the Veterans Administration for disability benefits.

- Committed food stamp fraud and tax fraud.

- Undervalued two automobiles; a 1999 Toyota Tacoma and a 1993 Pontiac Bonneville.

The Motion also alleged that Wells Fargo had scheduled a foreclosure sale for the Home, where the Movant currently resides, on March 19, 2019.

This Court scheduled the Hearing and heard evidence, testimony, and arguments from the parties. The Movant offered two Exhibits which were admitted, and she testified in support of the Motion. During her testimony, the Movant was adamant that she did not want to take up issues regarding the listing, sale, or sale proceeds of the Home because those matters were being handled

4

by the Domestic Relations Court [of Jefferson County, Alabama, Bessemer Division] (the "Domestic Relations Court"). In response to questions on cross-examination, the Movant refused to tell the Trustee whether she had paid, or missed, any of the mortgage payments that she was required to pay since August 2017 under the terms of the Divorce Decree. While she acknowledged that per the Divorce Decree she was to live in the Home and be responsible for all the debt associated with it, her only response to the Trustee's questions about making mortgage payments was that the mortgage was being addressed in the Domestic Relations Court. The Movant did acknowledge that a formal appraisal had not been performed on the Home.

The Debtor, through his counsel, argued that he did not complete the paperwork required to make a class action talcum powder claim for his former wife, and his claim against the Veterans Administration was for disability benefits only. He denied that he owed any debt to the Movant.

The Trustee disagreed strongly with the Home value asserted by the Movant of $418,000 to $470,000. The Trustee argued that, in his business judgment, there was not enough value or equity in the Home to justify selling it for the bankruptcy estate because its sale would not have resulted in any payment to the Debtor's unsecured creditors after the satisfaction of Wells Fargo's mortgage debt. The Trustee believes this analysis remains accurate today.

## II. Conclusions of Law

The central question before this Court is whether the Movant's allegations warrant reopening the Debtor's chapter 7 case. The answer is no, for the reasons articulated below.

As a preliminary matter, however, the Court finds that the allegations asserted in the Motion suffice to confer standing for purposes of the Motion. "A case may be reopened on motion of the debtor or other party in interest . . . ." Fed. R. Bankr. P. 5010. "A party in interest is 'anyone who has a legally protected interest that could be affected by the bankruptcy case.'" *In re Alliance*

5

Case 18-02778-DSC7    Doc 36    Filed 03/13/19    Entered 03/13/19 14:31:02    Desc Main
Document    Page 5 of 18

*Consulting Group LLC*, 588 B.R. 169, 173 (Bankr. S.D. Miss. 2018) (citing *Khan v. Xenon Health, L.L.C. (In re Xenon Anesthesia of Tex., P.L.L.C.)*, 698 Fed.Appx. 793, 794 (5th Cir. 2017)). Here, the Movant asserts that the Debtor "defaced and devalued" the Home by as much as $170,000. To that end, she claims to be a "bonafide creditor." (Doc. 29 at 1.) The Movant also alleges that the "debt" was incurred prepetition. Based upon this allegation–that the Movant is owed a prepetition debt for damage to the Home–the Court finds the Movant alleges a right to payment and therefore articulates a claim as defined by 11 U.S.C. § 101. Accordingly, the Court finds she has standing to move to reopen this case as a party in interest. *In re D'Antignac*, 2013 WL 1084214, No. 05-10620, *1, *2 (Bankr. S.D. Ga. Feb. 19, 2013) ("The term [party in interest] is construed broadly to allow affected parties to appear and be heard, but it is not infinitely elastic.") (internal citations omitted).

Pursuant to 11 U.S.C. § 350(b), "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). But "[b]efore reopening a case, the court should make the threshold determination that one of the three grounds articulated in § 350(b) exists." *In re Lee*, 356 B.R. 177, 180 (Bankr. N.D. W.Va. 2006). Indeed, the "[t]he ability to reopen a bankruptcy case is not a[n] automatic right but instead is left to the sole discretion of the bankruptcy court on a case by case basis looking at the particular circumstances and equities of that specific case." *In re Mohorne*, 404 B.R. 571, 576 (Bankr. S.D. Fla. 2009) (citing *Apex Oil Co. v. Sparks (In re Apex Oil Co.)*, 406 F.3d 538, 542–43 (8th Cir. 2005); *see also Citizens Bank & Trust Co. v. Case (In re Case),* 937 F.2d 1014, 1018 (5th Cir. 1991) ("§ 350(b) is a broad term which gives the bankruptcy court discretion to reopen a closed estate or proceeding when cause for such reopening has been shown.")). Looking at the

6

circumstances of this case, the Court is unpersuaded that reopening this case is a prudent exercise of its discretion.

(1) **No Assets/No Relief to the Debtor**

There are no assets to administer which would justify reopening this case. This is a conclusion supported by the evidence. At the hearing, the Trustee represented to the Court that, in his business judgment, there are no additional assets that can be sold to yield any payment to unsecured creditors. (*See also* Doc. 13.) And he strongly disagrees with the Movant's assessment of the Home's value at $418,000 to $470,000. The Trustee's position is substantiated by the fact that the only known purchase offer was for $270,000. (*See* Doc. 29.) The Court finds the Trustee's position to be credible, and finds there is no basis to reopen this case on the ground of administering assets. "To justify reopening, the likelihood of recovering additional assets must be substantial. If there is only a remote possibility of obtaining assets that would provide a meaningful distribution, the bankruptcy court may decline to reopen the case." *In re James*, 487 B.R. 587, 595 (Bankr. N.D. Ga. 2013) (citing Wm. Miller Collier et al., *Collier on Bankruptcy* ¶ 350.03 (16th ed. 2010)).

Nor would reopening the case accord the Debtor relief. Presumably, the Debtor opposes reopening this matter as doing so would potentially compromise his discharge. Thus, only if "other cause" exists should the case be reopened under 11 U.S.C. § 350(b).

**(2) Other Cause**

In the discretion of the bankruptcy court, a case may be reopened "for other cause," but the "burden of establishing cause is on the movant." *Nissan Motor Acceptance Corp. v. Daniels (In re Daniels),* 163 B.R. 893, 895 (Bankr. S.D. Ga. 1994) (citations omitted). In deciding whether "cause" exists, the court may consider several factors including:

> (1) the length of time that the case was closed, (2) whether a nonbankruptcy forum has jurisdiction to determine the issue which is the basis for reopening the case, (3)

7

whether prior litigation in the bankruptcy court determined that a state court would be the appropriate forum, (4) whether any parties would suffer prejudice should the court grant or deny the motion to reopen, (5) the extent of the benefit to the [movant] by reopening, and (6) whether it is clear at the outset that no relief would be forthcoming to the [movant] by granting the motion to reopen.

*In re Easley-Brooks*, 487 B.R. 400, 407 (Bankr. S.D.N.Y. 2013) (citing *In re Otto,* 311 B.R. 43, 47 (Bankr. E.D. Pa. 2004). Here, the most relevant factors are the lack of forthcoming relief if this case were reopened, and the availability and appropriateness of other forums to adjudicate the Movant's claims. This is so because the length of time the case was closed (a little less than four months) is inconsequential and the prejudicial/benefit factors are inherently part of the overall analysis. Turning to those factors, the Court considers the Movant's allegations in the context of what her Motion ultimately seeks – to challenge the Debtor's discharge.

<u>Futility</u>

Courts frequently hold that "[i]f reopening the closed case would serve no purpose, it is pointless to reopen the case and the motion should be denied." *D'Antignac*, 2013 WL 1084214, at *5 (citing *In re Premier Benefit Capital Trust,* 2006 WL 2385255, No. 6:93-bk-03550, *1 (Bankr. M.D. Fla. Aug. 15, 2006)). Indeed, "it is an abuse of discretion to reopen a case for a purpose that is futile." *In re Alliance Consulting Group LLC*, 588 B.R. 169, 174 (Bankr. S.D. Miss. 2018) (citing *Chase Auto. Fin., Inc. v. Kinion (In re Kinion)*, 207 F.3d 751, 757 (5th Cir. 2000)). The movant seeking to reopen "has the burden of showing that the case should be reopened, and if [the] objective for the reopening is 'unachievable and thus futile, the court should not reopen the case.'" *Matter of Delisfort-Crisostomo*, 2018 WL 5994715, No. 14-69797, *1 (Bkrtcy. N.D. Ga. 2018) (citations omitted).

Here, the Movant alleges that the Debtor undervalued real property on his bankruptcy schedules, namely, the Home. The Movant also alleges that the Debtor did not disclose all the

8

income on his bankruptcy schedules, he did not disclose being a party to two lawsuits, and he undervalued two automobiles. The implication of these allegations, which is consistent with the Movant's arguments at the Hearing, is that the Debtor fraudulently procured his discharge because he made misrepresentations on his bankruptcy schedules. (*See* Doc. 29 at 1 "Mr. Dawson . . . has committed fraud by falsifying his bankruptcy petition.")

A claim sounding in the fraudulent procurement of a discharge implicates 11 U.S.C. § 727(d). And "a creditor's request for an opportunity to seek a revocation of a discharge pursuant to § 727(d) may be sufficient cause to reopen a case depending on the circumstances of the specific case." *The Cadle Company v. Andersen (In re Andersen)*, 2011 WL 4571900, Nos. 10-015, 09-14033, *1,*3 (B.A.P. 1st Cir. 2011) (internal citations omitted). Therefore, to determine whether the Movant can achieve the underlying objective of her motion, the Court views her allegations through a § 727(d) lens because that is the applicable standard and the statutory authority upon which she would necessarily have to proceed in order to advance a claim that the Debtor's discharge should be revoked. *See Ross v. Wolpe (In re Wolpe)*, 2013 WL 1700930, No. 09-90130, *1,*5 (Bankr. N.D.N.Y. April 18, 2013) ("A denial of discharge 'imposes an extreme penalty for wrongdoing.' It is the 'death penalty of bankruptcy.' As a result, the provisions of § 727 are construed strictly against the objecting party and liberally in favor of the debtor. It is well-settled that the party objecting to the granting of a discharge bears the burden of persuasion by a preponderance of the evidence.") (citing *State Bank of India v. Chalasani (In re Chalasani),* 92 F.3d 1300, 1310 (2d Cir.1996); *Levine v. Raymonda (In re Raymonda),* No. 99–13523, Adv. Pro. No. 99–91199, slip op. at 4 (Bankr. N.D.N.Y. Feb. 9, 2001); *Grogan v. Garner,* 498 U.S. 279, 289 (1991)).

9

The Court is mindful that its "inquiry into the substance of the underlying relief sought by the moving party for the purpose of determining whether sufficient cause exists to justify reopening should not, however, devolve into a de facto ruling on the merits." *In re Cutright*, No. 08-70160, 2012 WL 1945703, *1, *4 (Bankr. E.D. Va. 2012) (citing *In re Jones,* 367 B.R. 564, 567 (Bankr. E.D. Va. 2007). Therefore, without delving into the merits, the Court considers the Movant's allegations for the limited purpose of deciding whether those allegations can plausibly satisfy the requirements of § 727(d)(1). It is an inquiry that the Court finds necessary in deciding whether, in its discretion, there is cause to reopen this case, or whether doing so would prove futile because the relief sought cannot be afforded. This is so because "[i]f it is clear that the moving party is unable to satisfy any of the requirements of § 727(d)(1), there will be no cause to reopen the case for the purpose of revoking the discharge." *Andersen*, 2011 WL 4571900, at *4 (B.A.P. 1st Cir. 2011) (citing *In re Kirschner,* 46 B.R. 583, 587 (Bankr. E.D.N.Y. 1985).

The Movant alleges that the Debtor undervalued the Home on his bankruptcy schedules by valuing it at approximately $250,000. (*See generally,* Doc. 29.) Other than the tax assessment, there is no evidence to substantiate that the Home was undervalued.[2] At the hearing, however, the Trustee made several representations that indicate the Debtor's valuation of the Home was reasonable, and certainly not intentionally fraudulent. To begin, the Trustee represented to the Court that in his business judgment he strongly disagreed with the tax assessment. He also pointed out that the only known purchase offer was for $270,000. And he represented that his

---

[2] The Movant submitted an email suggesting that the Debtor believed the Home to be worth substantially more than the amount listed in his bankruptcy schedules. (Movant's Ex. 1.) It is an email from the Movant's attorney which, in turn, quotes from an email that was received from the Debtor's divorce attorney. Simply put, it is an email within an email that is an unauthenticated out of court statement. In addition, the email clearly constitutes a settlement negotiation, which is inadmissible under Rule 408 of the Federal Rules of Evidence. The Court finds that the Debtor's bankruptcy schedules are more credible than this email. And because none of the correspondence submitted is from the Debtor himself, the Court is unpersuaded that it is more probative of his intent or belief than the bankruptcy schedules he signed under penalty of perjury.

10

investigation, which included an Alacourt search, indicated that the house "had been going through foreclosure repeatedly over the last couple of years." Given these representations, the Court is unpersuaded that the Debtor undervalued the Home in his bankruptcy schedules; much less that he did so with fraudulent intent. On the contrary, the Trustee represented that the Home's value was much less than the tax assessment, as evidenced by the $270,000 purchase offer. Based on this offer and the Trustee's representations, the Debtor's valuation on Schedule D of his bankruptcy petition seems like a close approximation of the Home's actual value. Moreover, at the Hearing, the Movant asserted that as a result of the Debtor defacing and devaluing the Home, its value has decreased by as much as $170,000. With that additional allegation from the Movant, it seems even less likely that the value of the Home, as listed in the Debtor's bankruptcy schedules, was a sham. On this evidence, it is clear the Movant could not satisfy the requirements of § 727(d)(1). *See Velde v. Omang (In re Omang)*, 403 B.R. 647, 653 (Bankr. D. Minn. 2009) ("Statements of values by debtors in their schedules are opinions. Valuations made in good faith are not a basis for denial of discharge simply because they turn out to be wrong.").

The Movant further alleges that the Debtor falsified his income on his bankruptcy schedules. (*See* Doc. 29 at 3-4.) She contends that he makes money as a driver which was undisclosed on his chapter 7 petition. The evidence of this falsehood is an allegation that he "brags about making $3,000 to $5,000 per week," a bill of lading, and an excerpt from a deposition transcript.[3] (Doc. 29 at 4.) Obviously, the allegation that the Debtor "brags" about his income is unsubstantiated. And the bill of lading is virtually unreadable, so there is no qualified proffer there. The deposition transcript is likewise difficult to read, and the Court cannot verify when the deposition took place or even if the Debtor was, in fact, the deponent.

---

[3] Likewise, this "proof" does not to substantiate the Movant's allegation that the Debtor does not report his true income to the IRS. Nor was any corroboration of this allegation forthcoming at the Hearing.

11

It is true that the Debtor's Schedule I indicates he was employed by a trucking company without reporting any income from that employment; instead, he only lists his Social Security benefits and food stamps as income. (*See* Doc. 1.) But this omission would not have warranted the denial of the Debtor's discharge because it is immaterial unless it "is related to the debtor's business transactions, or if it concerns the discovery of assets, business dealings, or the existence or disposition of the debtor's property." *R & R Express, Inc. v. Cawthon (In re Cawthon)*, 594 B.R. 913, 923 (Bankr. N.D. Ga. 2018). Based on his representations to the Court, there is no indication that the Trustee lacked "sufficient information for the proper administration of the chapter 7 case," which is the purpose underlying the materiality element of § 727(a)(4)(A). *See Lloyd v. Herchakowski (In re Herchakowski)*, 2013 WL 620291, No. 11-1679, *1, *5 (Bankr. D.N.J. Feb. 19, 2013). And a "[m]ere failure to disclose, without more, is insufficient to deny a debtor's discharge." *See In re Cawthon,* 594 B.R. 913, 923 (Bankr. N.D. Ga. 2018) (citing *In re Garcia*, 88 B.R. 695, 705 (Bankr. E.D. Pa. 1988)). Here, the Movant's allegations of falsified income are, on their face, conclusory assertions because they are uncorroborated by her own evidentiary submissions. More importantly, however, there is no suggestion from the Trustee's representations that he lacked enough information to investigate or properly administer this case. Indeed, he stands by his August 7, 2018 report, which states that "he made a diligent inquiry into the financial affairs of the debtor. . . ." (Doc. 13.) These representations make the alleged omission immaterial. And given the immateriality of the alleged omission, there is no basis upon which to plausibly conclude that the omission would have resulted in the denial of discharge under § 727(a) and, hence, grounds for revocation under § 727(d). That being the case, it is clear the Movant could not carry her burden under § 727(d). *Yules v. Gillis (In re Gillis)*, 403 B.R. 137, 144–45 (B.A.P 1st Cir. 2009) ("Section 727(d)(1) allows a court to revoke discharge if . . . the fraud, if

12

Case 18-02778-DSC7    Doc 36    Filed 03/13/19    Entered 03/13/19 14:31:02    Desc Main
Document    Page 12 of 18

known, would have resulted in denial of discharge under § 727(a). *See* 11 U.S.C. § 727(d)(1). The party seeking revocation bears the burden of proving each of these elements by a preponderance of the evidence." (citations omitted)).

Also, the Movant alleges that the Debtor did not disclose a class action claim he has on behalf of his former, deceased wife. At the hearing, however, the Debtor proffered through counsel that he never completed the paperwork to pursue the class-action litigation. Regarding the assertion that the Debtor failed to disclose that he was a party to a lawsuit against the Veterans Administration, Debtor's counsel proffered that the Debtor only has a claim for disability benefits, which would be exempt from the reach of creditors under Alabama law, if any benefits were awarded. *See* Ala. Code § 5-19-15. The Movant also alleges that the Debtor undervalued two automobiles on his schedules. In support of her allegation, the Movant submitted an internet valuation that purports to give the Kelley Blue Book values for the Debtor's cars.[4] Notwithstanding the obvious evidentiary issues associated with this document, "[s]tatements of values by debtors in their schedules are opinions. Valuations made in good faith are not a basis for denial of discharge simply because they turn out to be wrong." *See Omang*, 403 B.R. at 653 (Bankr. D. Minn. 2009).

As for the Movant's allegation of food stamp fraud, wherein she claims that the Debtor "falsified his income to the Food Stamp Program and is receiving benefits based on fraud," the

---

[4] The Court notes that the Movant's evidence regarding the devaluation of the 1999 Toyota Tacoma and the 1993 Pontiac Bonneville was late-filed after the close of the evidence in this case. (*See* Doc. 33; *see also* Doc. 35.) Because, however, the Court indicated at the Hearing that it would allow the Movant to present her evidence regarding the automobiles, it will consider the same. The Court also notes that a "gift letter" was included in the Movant's late-filed evidentiary submission. The letter purports to indicate that the Movant "gifted" the Debtor money toward the purchase of the Home and paid off certain debts for the Debtor. To the extent the Movant relies on these documents as evincing something other than her good nature, the Court observes that "a gift is not a debt." *Ellinger v. U.S.*, 470 F.3d 1325, 1333 (11th Cir. 2006).

13

Court is unpersuaded that any bankruptcy purpose would be served by reopening this case on such an allegation. (*See* Doc. 29 at 8); *see also In re James*, 487 B.R. 587, 595 (Bankr. N.D. Ga. 2013) (citing *In re Palij,* 202 B.R. 27, 32 (Bankr. D.N.J. 1996) for the proposition that "[T]he fact that no bankruptcy purpose would be served by reopening warrants an abstention by the bankruptcy court."). And to the extent this food stamp document is submitted as evidence that the Debtor falsified his income on his bankruptcy petition, the Court is unpersuaded for the reasons discussed above.

Of course, the futility of reopening this case is underscored by the fact that it is a "no asset" chapter 7 case. At the hearing on the Motion, the Trustee made this point emphatically. Thus, assuming *arguendo*, that the Movant's allegations are true, there are still no assets to distribute. In short, this case lacks assets, and the Movant's allegations lack muster. Denial of discharge under § 727 is a "draconian act" and revocation of a discharge is a "severe and extreme" result. *Omang*, 403 B.R. at 652; *Snyder v. Zaligson (In re Zaligson),* 591 B.R. 724, 736 (Bankr. D. Minn. 2018). As such, it takes more than bare assertions or accusations of fraud to revoke a discharge.

Finally, the Movant's prayer for relief evinces that the purpose of the Motion cannot be achieved here. That prayer seeks to stop the foreclosure (which she concedes is a state court remedy), to "recommend to the Honorable Judge Jeter that the home be awarded to [her]" (an impermissible advisory opinion, which federal courts have no jurisdiction to render), and to "grant all remedies available due to this fraud" (without plausible allegations to substantiate the same). In short, this Court cannot afford the Movant the relief she seeks, therefore it is futile to reopen this case.

Simply put, the Movant's allegations are either contradicted by the evidence, undermined by Trustee's representations, unsubstantiated, or all of the above. Without more, this Court is not

14

convinced by the Movant's assertions that the Debtor obtained a discharge through fraud. And because it is implausible that § 727 relief would be forthcoming on bare assertions of fraud, her Motion must be denied. *See In re Cutright*, 2012 WL 1945703, No. 08-70160, *1, *4 (Bankr. E.D. Va. 2012) (a motion to reopen should be denied "if reopening a case would be futile because the moving party could not achieve the objective underlying the motion to reopen.").

<u>Availability of Other Forums or Other Proceedings</u>

Not only would reopening this case prove futile, other forums are available to decide the issues raised here. This is an additional factor weighing against reopening this case. To begin, the Movant concedes that state court is not only an *available* forum to decide issues relating to the Home, but it is the *appropriate* forum because these matters are already pending there. Indeed, at the Hearing, many times the Movant responded "that is being handled in domestic relations court" when questioned by the Trustee about issues related to the mortgage and foreclosure of the Home. And this Bankruptcy Court agrees. The Debtor surrendered his interest in the Home on August 28, 2018, and Wells Fargo was given relief from the automatic stay on September 6, 2018. (Docs. 21, 24.) Issues regarding the Home, the mortgage lien on the Home, and any impending foreclosure are squarely the concern of the state courts. *See In re WinPar Hospitality Chattanooga, LLC*, 401 B.R. 289, 294 (Bankr. E.D. Tenn. 2009) ("[T]he exclusivity of the bankruptcy court's jurisdiction reaches only as far as the automatic stay provisions of 11 U.S.C. § 362."); *see also Harrell v. Sharp (In re Harrell)*, 754 F.2d 902, 907 (11th Cir. 1985) ("Thus, limited to its proper role, the bankruptcy court will not duplicate the functions of state domestic relations courts, and its rulings will impinge on state domestic relations issues in the most limited manner possible."). Accordingly, not only is there another forum available to determine the issues raised in the Motion, but the Movant concedes that another forum is the appropriate tribunal to decide those issues.

15

In addition to the allegations referenced above, the Movant also alleges that she was not provided notice of the Debtor's bankruptcy case or discharge, and that she is an unlisted creditor. (*See* Doc. 29.) To the extent that the Movant alleges the Debtor committed fraud in creating the debt that she claims is owed, the Movant can bring suit to determine whether such a debt is nondischargeable in any court, at any time. This is so because "[u]nder § 523(a)(3)(B), a debtor's failure to schedule intentional tort creditors, whether by design or by accident, removes both the deadline in which to file intentional tort nondischargeability actions as well as the bankruptcy court's exclusive jurisdiction to hear them." *Muir v. McWilliams (In re Muir)*, 2013 WL 4447027, No. 13-50136, at *3, (citing *In re Guseck,* 310 B.R. 400, 404 (Bankr. E.D. Wis. 2004)). "In short, the penalty to the debtor for failing to schedule a [debt under § 523(a)(2)(4) or (6)] or otherwise inform the creditor of the bankruptcy is forfeiture of the right to enjoy exclusive federal jurisdiction and loss of the sixty-day limitations period applicable in the exclusive jurisdiction actions.'" *In re Johnson*, 521 B.R. 912, 917–18 (Bankr. W.D. Ark. 2014) (internal citations omitted). This results in three litigation options "for parties that continue to have a dispute concerning dischargeability of debts after a bankruptcy case is administered." *Muir v. McWilliams (In re Muir)*, 2013 WL 4447027, No. 13-50136, at *3, citing *In re Gustin,* 343 B.R. 909, 913 (Bankr. W.D. Wis. 2005).

> First, either the debtor or the creditor can file a complaint to determine dischargeability of the debt under § 523(a)(3). This complaint can be filed in either state court or bankruptcy court because the cause of action is now based on §523(a)(3) and not the underlying alleged § 523(a)(2), (4), or (6) cause of action; the bankruptcy court's exclusive jurisdiction to hear a § 523(a)(2), (4), or (6) action has ended . . . Second, at the time the creditor begins collection activity in state court, the debtor could allege as an affirmative defense the discharge of the debt in bankruptcy. The state court would then be able to resolve the issue under its concurrent jurisdiction to hear a § 523(a)(3) cause of action. Finally, the debtor could file a motion with the bankruptcy court to enforce the discharge injunction under § 524(a). However, "as long as a creditor has a good faith basis for believing that its debt was excepted from discharge or . . . had no knowledge of any such

discharge, the creditor is not subject to sanctions for violating the discharge injunction . . . ."

*In re Johnson*, 521 B.R. at 918 (citing *Everly v. 4745 Second Avenue, Ltd. (In re Everly)*, 346 B.R. 791, 796-98 (B.A.P. 8th Cir. 2006)).

Any of the Debtor's debts under the Divorce Decree that meet the definition of Domestic Support Obligations (11 U.S.C. § 101(14A)) are nondischargeable under §§ 523(a)(5). The state court retains authority to determine any issues between the parties involving such Domestic Support Obligations that were not discharged in the Debtor's chapter 7 case. This evinces, once again, the availability of a forum other than the bankruptcy court to adjudicate any Domestic Support Obligations that the Movant has against the Debtor.

**Conclusion**

Without reading too much between the lines, it seems likely that a bitter divorce loomed large here and played a motivating role in the Movant's decision to file the Motion. And to the extent the Movant faces foreclosure on the Home because of that divorce, the Court understands the implications and importance of these issues. But, no matter how dire the Movant's current circumstances are, reopening this bankruptcy case will not afford her the relief she seeks.

As the Movant conceded at the Hearing, matters related to the Home, the mortgage, the mortgage payments, and whether she has made those mortgage payments pursuant to the Divorce Decree, are all matters being adjudicated by the Domestic Relations Court. State court is also the appropriate forum to decide matters concerning the upcoming foreclosure on the Home because this Court granted Wells Fargo's Motion for Relief from the automatic stay in the Debtor's chapter 7 case more than 6 months ago. Outside of the fact that this Court "will not duplicate the functions of state domestic relations courts," is the reality that the Movant's allegations, even if true, do not justify reopening this case. Because the Movant is unable to satisfy the requirements of §

17

727(d)(1), there is no cause to reopen this case for the purpose of revoking the Debtor's discharge. To hold otherwise would be futile and would waste judicial resources. In reaching this conclusion, the Court is mindful of the fact that the Trustee who investigated this case has served in this District for many years, and his standard practice and procedure indicate that he would not hesitate to take appropriate action if he believed the Debtor had intentionally undervalued assets or committed fraud on the Court.

This is not to say that the Movant cannot challenge the dischargeability of her debt pursuant to § 523 if she believes it was procured by fraud. However, her attempt to reopen the Debtor's chapter 7 case to challenge his discharge fails as futile because it rested on unsubstantiated allegations of fraud that were either contradicted by the evidence, were immaterial, or were both. Accordingly, the Court will not abuse its discretion by reopening this chapter 7 case where the underlying objective for the Motion remains unachievable.

For the reasons stated herein, the Movant's Motion is **DENIED**. The Court will enter a separate Order consistent with this Memorandum Opinion.

Dated: March 13, 2019

/s/ D. Sims Crawford
D. SIMS CRAWFORD
United States Bankruptcy Judge